# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MONTGOMERY MUTUAL<br>INSURANCE COMPANY<br>17810 Meeting House Road<br>Sandy Spring, MD 20860,<br><br>and<br><br>PEERLESS INSURANCE COMPANY,<br>62 Maple Avenue<br>Keene, NH 03431,<br><br>        Plaintiffs,<br><br>v.<br><br>W.C. & A.N. MILLER DEVELOPMENT<br>COMPANY,<br>4315 50th Street, NW<br>Washington, DC 20016,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:07-cv-00447-CKK |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to 28 U.S.C. § 2201, Plaintiffs Montgomery Mutual Insurance Co. ("Montgomery") and Peerless Insurance Co. ("Peerless") (collectively, the "Insurers") bring this declaratory judgment action against defendant W.C. & A.N. Miller Development Co. ("Miller Development") seeking a declaration concerning the parties' rights and obligations under the terms and conditions of several liability insurance policies issued to Miller Development as follows:

# I.

## NATURE OF THE ACTION

1.  The Insurers issued five consecutive liability insurance policies to Miller Development for the period from September 30, 2001 through September 30, 2006 (collectively, the "Policies").

2.  In 2005, a neighboring radio station owner ("WPGC") sued Miller Development alleging that it allowed one of its properties to be operated as an unlicensed waste dump and allowed waste from that property to spill over onto WPGC's property. The lawsuit sought compensatory damages for WPGC's costs in removing the waste and cleaning up its own property—which it was required to do pursuant to directives from Maryland county and state environmental agencies—as well as punitive damages. Miller Development and WPGC have settled the litigation.

3.  The Insurers seek declarations from this Court that:

- There is no coverage under any of the Policies for the dispute between Miller Development and WPGC because coverage is barred by the Policies' pollution exclusions;

- There is no coverage under some or all of the Policies for the dispute between Miller Development and WPGC to the extent that WPGC's property damage was "expected or intended" by Miller Development;

- There is no coverage under some or all of the Policies for the dispute between Miller Development and WPGC to the extent that, prior to the effective period of one or more of the Policies, Miller Development "knew that the . . . 'property damage' had occurred, in whole or in part;"

- There is no coverage under any of the Policies for the dispute between Miller Development and WPGC to the extent that it does not concern "property damage" under the Policies;

- There is no coverage under any of the Policies for any punitive damages, to the extent that punitive damages are uninsurable under applicable law, and/or for other relief sought by WPGC other than compensatory damages; and

2

- The Insurers have satisfied their obligation to defend Miller Development against the lawsuit by agreeing to defend it under a reservation of rights and subsequently offering to pay for Miller Development's chosen defense counsel after the insurer initially providing a defense to Miller Development withdrew that defense.

## II.

## PARTIES

4. Plaintiff Montgomery Mutual Insurance Co. ("Montgomery") is a corporation engaged in the business of providing liability insurance. Montgomery is organized and exists pursuant to the laws of the State of Maryland with its principal place of business in Maryland. Montgomery is licensed to do business, and does business, in the District of Columbia.

5. Plaintiff Peerless Insurance Co. ("Peerless") is a corporation engaged in the business of providing liability insurance. Peerless is organized and exists pursuant to the laws of the State of New Hampshire with its principal place of business in New Hampshire. Peerless is licensed to do business, and does business, in the District of Columbia.

6. Upon information and belief, Defendant W.C. & A.N. Miller Development Co. ("Miller Development") is a real estate company serving the Washington D.C. metropolitan area. Miller Development is organized and exists pursuant to the laws of the State of Delaware with its principal place of business in Washington, D.C. Miller Development is licensed to do business, and does business, in the District of Columbia.

## III.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). There is complete diversity between the parties, and the amount in controversy exceeds the sum of $75,000 exclusive of interests and costs. Plaintiffs bring this action pursuant to 28 U.S.C. §§ 2201 and 2202.

3

8.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1), 1391(a)(2) and 1391(c).  The dispute involves insurance policies issued to Miller Development, which resides in this judicial district and is subject to personal jurisdiction in this district.

## IV.

## FACTUAL ALLEGATIONS

### Policies Issued by Montgomery and Peerless

9.   Montgomery Mutual issued liability Policy No. GL 9537911 to Miller Development effective from September 30, 2001 to September 30, 2002 with a $1 million per occurrence limit and a $2 million general aggregate limit (the "2001 Policy").  The declarations page and relevant terms of the 2001 Policy are attached hereto as Exhibit A.

10.   Peerless issued liability Policy No. GL 9537911 to Miller Development effective from September 30, 2002 to September 30, 2003 with a $1 million per occurrence limit and a $2 million general aggregate limit (the "2002 Policy").  The declarations page and relevant terms of the 2002 Policy are attached hereto as Exhibit B.

11.   Peerless Policy No. GL 9537911 was subsequently renewed to be effective from September 30, 2003 to September 30, 2004 (the "2003 Policy"), September 30, 2004 to September 30, 2005 (the "2004 Policy") and September 30, 2005 to September 30, 2006 (the "2005 Policy").  The declarations pages and relevant terms of these policies are attached hereto as Exhibits C, D and E, respectively.

12.  The insuring agreement in each of the Policies provides that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

4

2001 and 2002 Policies, Amendment of Insuring Agreement – Known Injury or Damage Endorsement ¶ 1.a; 2003, 2004 and 2005 Policies, Commercial General Liability Coverage Form, Section I, Coverage A ¶ 1.a.

13.  The insuring agreement of each of the Policies also provides that:

(b) This insurance applies to . . . "property damage" only if:

(1) The . . . "property damage" is caused by an "occurrence" that takes place in the coverage territory";

(2) The . . . "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the . . . "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the . . . "property damage" occurred, then any continuation, change or resumption of such . . . "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\*        \*        \*

(d) "[P]roperty damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the . . . "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the . . . "property damage"; or

(3) Becomes aware by any other means that . . . "property damage" has occurred or has begun to occur.

2001 and 2002 Policies, Amendment of Insuring Agreement – Known Injury or Damage

Endorsement ¶¶ 1.b, 1.d; 2003, 2004 and 2005 Policies, Commercial General Liability Coverage

Form, Section I, Coverage A ¶¶ 1.b, 1.d.

      14.   Paragraph 1. of Section II – Who Is An Insured of each Policy provides that if the

named insured is designated as:

> An organization other than a partnership, joint venture or limited
> liability company, you are an insured.  Your "executive officers"
> and directors are insureds, but only with respect to their duties as
> your officers and directors.

Policies, Commercial General Liability Coverage Form, Section II ¶ 1.d.

      15.   Each of the Policies defines "executive officer" as "a person holding any of the

officer positions created by your charter, constitution, by-laws or any other similar governing

document."  Policies, Commercial General Liability Coverage Form, Section V¶ 6.

      16.   Each of the Policies defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss
> of use of that property. . . . or

> b. Loss of use of tangible property that is not physically injured.

Policies, Commercial General Liability Coverage Form, Section V ¶ 17.

      17.   Each of the Policies does not cover:

> "[P]roperty damage" expected or intended from the standpoint of
> the insured.

Policies, Commercial General Liability Coverage Form, Section I ¶ 2.a.

      18.   Each of the Policies contains the following pollution exclusion, which excludes

coverage for:

> (1) "Bodily injury" or "property damage" arising out of the actual,
> alleged or threatened discharge, dispersal, seepage, migration,
> release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

\*     \*     \*

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

\*     \*     \*

(2)     Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

Policies, Commercial General Liability Coverage Form, Section I ¶ 2.f.

19.  Each of the Policies defines "pollutants" as:

> [A]ny solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

Policies, Commercial General Liability Coverage Form, Section V ¶ 15.

## The Underlying Litigation Against Miller Development

20.  In November 2005, Infinity WPGC (AM) Inc., now known as CBS WPGC (AM) Inc. ("WPGC"), filed suit against Miller Development and "W.C. & A.N. Miller Companies, Inc." seeking recovery for harm alleged due to the operation of an unlicensed waste dump at, and subsequent migration of waste from, a particular Miller Development property.  The action was captioned *Infinity WPGC (AM), Inc.  v. W.C. & A.N. Miller Companies, Inc., et al.*, No. CAL05-24114 (Md. Cir. Ct., Prince George's Co. Nov. 16, 2005), and the first amended complaint is attached hereto as Exhibit F.  Upon information and belief, W.C. & A.N. Miller Companies, Inc. is a non-existent entity.

21.  According to the amended complaint, Miller Development was the owner of two parcels of commercial property along South Addison Road in Capitol Heights, Maryland (the "Miller Property") from at least 1987 until early 2005.  During all times material to the complaint, WPGC owned the property adjacent to the Miller Property (the "WPGC Property"), which contained WPGC's broadcasting towers.  Amended Complaint ¶¶ 14-18.

22.  WPGC alleged that, in November 2000, Miller Development leased the Miller Property to H & H Hauling Service ("H & H"), who thereafter subleased the property to two subtenants, Mainor's Bus Service and J. Williamson Demolition ("Williamson").  WPGC alleged that the subtenants conducted business on the Miller Property that was incompatible with the zoning status of the land and contrary to applicable state and county regulations. *Id.* ¶¶ 21-23.

8

23. In particular, WPGC alleged that the Miller Property was used as an "unlicensed trash dump" for, among other things, "a large quantity of construction debris, including . . . metallic construction debris." *Id.* ¶¶ 24, 29.

24. WPGC also contended that Miller Development "allowed and/or was aware of" the use of the Miller Property and had been cited for violating environmental codes pertaining to: (1) the handling of solid waste in a manner that could create a nuisance, pollute the air, discharge pollutants into state waters, impair the quality of the environment or injure public health; (2) the operation of an open dump; and (3) burial of waste. *Id.* ¶¶ 24-25 (identifying the code provisions as Code of Maryland Regulations 26.04.07.03 A (1-6), B(4) and Prince George's County Code, Subtitles 21-113(a), 21-113(c) and 21-117(c)).

25. WPGC further alleged in the complaint that, up until the time when Miller Development sold the property in 2005, Miller Development allowed the dumping of waste to occur, failed to take reasonable steps to secure the property or prevent the dumping, and did not clean up the property prior to selling it. *Id.* ¶ 27.

26. WPGC asserted that it learned that "a twenty-five foot high mound of garbage" from the Miller Property had spilled over onto its property in March 2005 when it received notice from the Prince George's County Department of Environmental Resources that it was in violation of the County's anti-litter ordinance and had to clean up its property at its own expense. *Id.* ¶¶ 1, 30. The Maryland Department of Environment allegedly imposed additional requirements on the manner in which WPGC cleaned up its property. *Id.* ¶ 30.

27. WPGC also contended that, during the time when the waste materials were located on the Miller and WPGC Properties, WPGC experienced fluctuations in the strength of its radio

signal and incurred costs in trying to address those fluctuations. These fluctuations allegedly disappeared once the waste materials were removed. *Id.* ¶ 33.

28. As of June 2006, when its amended complaint was filed, WPGC alleged that it had spent approximately $300,000 to remove the waste materials located on its property. *Id.* ¶ 31.

29. Upon information and belief, the Prince George's County Department of Environmental Resources directed Miller Development and H & H to remove the waste materials from the Miller Property to conform the property to Prince George's County Code § 13-233 requiring the maintenance of property "in clean, safe, secure and sanitary condition . . . so as not to create a public nuisance or adversely affect the public health, safety, or welfare" Prince George's County Department of Environmental Resources, Property Maintenance Violation Notice, Case No. PM-444-3-01 (April 3, 2001).

30. Upon information and belief, in 2003, the Prince George's County Health Department's Division of Environmental Health issued a notice of violation to Miller Development and Williamson for "[c]ollection of solid waste . . . outside on the ground with no environmental controls" and directed that they "[i]mmediately cease bring[ing] any material (solid waste) to the site" and "[r]emove solid waste to an approved solid waste collection facility within 30 calendar days." Prince George's County Health Department, Notice of Violation (Mar. 7, 2003). Later in 2003, the Maryland Department of the Environment issued a Site Complaint against Miller Development and Williamson for violations of the state's "Solid Waste and Sludge Disposal" laws and directed that additional dumping cease and that all solid waste be moved to an approved collection facility. Maryland Department of the Environment, Site Complaint No. SC-O-03-SW-517 (Apr. 4, 2003).

31.  Upon information and belief, before WPGC became aware that waste material was on its property, one or more Miller Development employees, including its Vice President of Commercial Leasing and Management, observed or was informed that certain equipment on a pile of construction debris was located on WPGC's Property.  According to the Miller Development website, its Vice President of Commercial Leasing and Management is a member of its "Executive Team."

<b><u>Coverage Correspondence and Settlement</u></b>

32.  Miller Development notified the Insurers of the WPGC lawsuit in or around December 2005.

33.  The Insurers conducted a preliminary investigation of the matter and, in February 2006, agreed to defend Miller Development against the lawsuit under the Policies subject to a reservation of their rights.

34.  Among other things, the Insurers reserved their rights to deny coverage for dispute between Miller Development and WPGC based upon the Policies': (1) definition of "property damage"; (2) pollution exclusions; (3) expected or intended injury exclusions; and (4) known injury exclusions.  This reservation of rights was not contested by Miller Development for ten months, until after Miller Development and WPGC settled their dispute.

35.  Upon information and belief, prior to notifying the Insurers of the lawsuit, Miller Development sought coverage from its professional liability insurer.  The professional liability insurer provided a defense to Miller Development under a reservation of rights and assigned defense counsel to represent Miller Development in the litigation.  Miller Development hired its own counsel, George Masson, to "shadow" defense counsel's work.  In their February 2006 reservation of rights, the Insurers asked Miller Development for additional information regarding

the defense provided by the professional liability insurer so that the Insurers could coordinate in the defense of the dispute.

36. Upon information and belief, in June 2006, the professional liability insurer denied coverage under its policy on a number of grounds including that the underlying claim: (1) arose out of wrongful acts committed with the knowledge that they were wrongful acts; and (2) arose out of the presence of pollutants. The professional liability insurer withdrew its defense in July 2006.

37. After the withdrawal of initial defense counsel, the Insurers agreed under their reservation of rights to pay reasonable and necessary costs for Miller Development's preferred counsel, Mr. Masson, to act as defense counsel. The Insurers and Miller Development have not agreed upon the reasonable and necessary costs of defense. Therefore, no defense payments have been made yet by the Insurers.

38. In October 2006, Miller Development and WPGC participated in a mediation that resulted in a settlement-in-principle of the underlying litigation.

39. The Insurers also attended the mediation. At the mediation, the Insurers and Miller Development agreed to resolve any potential obligations under the Insurers' Policies for the dispute between Miller Development and WPGC. However, two months later, in December 2006, the Insurers received a letter from Miller Development's coverage counsel asserting claims for coverage under the Policies.

40. In that December 2006 letter, Miller Development belatedly disputed the Insurers' basis for issuing their reservation of rights, alleged that the Insurers had breached their duties to defend and indemnify, and tendered a demand seeking: (1) the amount of the underlying settlement payment with WPGC; (2) defense counsel's fees through October 2006; and (3)

additional defense counsel fees incurred since October 2006.  These amounts total more than $75,000.

## V.

## CONTROVERSY AND RIPENESS

41.  The Insurers and Miller Development currently dispute their rights and obligations under the terms and conditions of the Policies for defense and indemnity arising out of the dispute between Miller Development and WPGC.

42.  The Insurers have reserved their rights to deny coverage under their Policies and have informed Miller Development why the Policies do not provide coverage.  Miller Development has disputed the Insurers' reservation of rights and asserted that the Insurers have breached their duties to defend and indemnify it and demanded payment of the underlying settlement amount plus defense costs.

43.  The Insurers now seek a declaration from this Court that there is no coverage for the dispute between Miller Development and WPGC under the Policies.  Upon information and belief, Miller Development contests this assertion.

44.  These issues will directly govern the parties' rights and obligations under the Policies.  As a result, these issues are ripe for adjudication.

## VI.

## CLAIM FOR DECLARATORY RELIEF - COUNT I
### (Pollution Exclusion)

45.  The Insurers incorporate by reference each of the allegations of paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46.  Miller Development owned or occupied the Miller Property at all times relevant to this matter.

13

47. From at least 2000 on, the Miller Property was used by Miller Development or others for "the handling, storage, disposal, processing or treatment of waste."

48. The waste materials brought to the Miller Property were "transported, handled, stored, treated, disposed of, or processed as waste" by Miller Development or others.

49. The waste materials that were located on the Miller Property and the WPGC Property are "pollutants" as defined in the Policies as they were "solid . . . irritant[s] or contaminant[s], including . . . . waste."

50. Accordingly, the Insurers are entitled to a declaration that there is no coverage available under any of the Policies for the dispute between Miller Development and WPGC because coverage is excluded by the Policies' pollution exclusions.

## VII.

### CLAIM FOR DECLARATORY RELIEF - COUNT II
### (Expected or Intended Injury)

51. The Insurers incorporate by reference each of the allegations of paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. No later than April 2001, Miller Development knew that the waste materials on the Miller Property violated Prince George's County Code § 13-233, enacted to prevent adverse health effects, and that it was directed to remove the waste materials from its property.

53. No later than April 2003, Miller Development knew that the presence of the waste materials at the Miller Property violated Prince George's County and Maryland environmental regulations that were enacted to protect the environment and prevent injury to human health, and that is was required to remove the waste materials from its property.

54. Prior to 2005, Miller Development knew that certain waste material was located on WPGC Property.

14

55. No later than 2005, Miller Development knew that the waste materials on the Miller Property had spilled over onto the WPGC's Property and that WPGC was required to remove the waste pursuant to Prince George's County and Maryland environmental agency directives.

56. Each of the Policies excludes coverage for "'property damage' that is expected or intended from the standpoint of the insured."

57. As early as April 2001, but no later than 2005, Miller Development "expected or intended" the property damage at issue.

58. Accordingly, the Insurers are entitled to a declaration that there is no coverage available for the dispute between Miller Development and WPGC to the extent that "property damage" was "expected or intended" by the Miller Development.

## VIII.

## CLAIM FOR DECLARATORY RELIEF - COUNT III
### (Known Injury Provision)

59. The Insurers incorporate by reference each of the allegations of paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60. Prior to 2005, Miller Development, including its Vice President of Commercial Leasing and Management, knew that waste material was located on the WPGC Property.

61. No later than 2005, Miller Development, including its Vice President of Commercial Leasing and Management, knew that the waste materials from the Miller Property were located on WPGC's Property and that WPGC was required to clean the materials up pursuant to Prince George's County and Maryland environmental agency directives.

62. Under the "known injury" provisions of each of the Policies' insuring agreements, there is no coverage if the insured (defined to include Miller Development's "'executive officers' and directors" or any "'employee' authorized by [Miller Development] to give or receive notice

of an 'occurrence' or claim) "knew that the . . . 'property damage' had occurred, in whole or in part."

63.  No later than 2005, Miller Development, including its Vice President of Commercial Leasing and Management, knew that "property damage" on WPGC's Property had occurred, in whole or in part.

64.  Accordingly, the Insurers are entitled to a declaration that there is no coverage available under some or all of the Policies for the dispute between Miller Development and WPGC because of the "known injury" provisions in the Policies' insuring agreements.

### IX.

### CLAIM FOR DECLARATORY RELIEF - COUNT IV
### (Property Damage)

65.  The Insurers incorporate by reference each of the allegations of paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66.  In its complaint, WPGC alleged, *inter alia*, that during the time when the waste material was located on the Miller and WPGC Properties, WPGC experienced fluctuations in the strength of its radio signal and incurred costs in trying to address those fluctuations.  These fluctuations allegedly disappeared once the waste material was removed.

67.  Each of the Policies defines "property damage" as:

> a.  Physical injury to tangible property, including all resulting loss of use of that property. . . . or

> b.  Loss of use of tangible property that is not physically injured.

68.  Certain allegations in the WPGC Complaint, including, *inter alia*, the fluctuation in the strength of a radio signal, do not constitute either "[p]hysical injury to tangible property" or "loss of use of tangible property that is not physically injured."

69. Accordingly, the Insurers are entitled to a declaration that there is no coverage available under any of the Policies for the dispute between Miller Development and WPGC to the extent WPGC does not seek to recover for "property damage" under the Policies.

## X.

### CLAIM FOR DECLARATORY RELIEF - COUNT V
### (No Coverage for Certain Relief Sought by WPGC)

70. The Insurers incorporate by reference each of the allegations of paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71. In its complaint, WPGC sought relief other than compensatory damages, such as *inter alia* punitive damages.

72. Upon information and belief, all of WPGC's claims have been resolved by the settlement.

73. Accordingly, to the extent that any portion of the settlement encompasses punitive damages and to the extent that insurance coverage for punitive damages is precluded under applicable law, and/or to the extent the settlement does not concern compensatory damages, the Insurers are entitled to a declaration that there is no coverage available under any of the Policies for any such relief.

## XI.

### CLAIM FOR DECLARATORY RELIEF - COUNT VI
### (Satisfaction of Duty to Defend)

74. The Insurers incorporate by reference each of the allegations of paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75. The Insurers agreed to defend Miller Development against the WPGC lawsuit under a reservation of rights. The Insurers also sought information concerning the defense being

provided to Miller Development by its professional liability insurer, so that the Insurers could coordinate the defense with that insurer.

76. After the professional liability insurer withdrew its defense in July 2006, the Insurers agreed to pay reasonable and necessary costs for Miller Development's chosen defense counsel.

77. The Insurers and Miller Development have not agreed upon the reasonable and necessary costs of defense and therefore no defense payments have been made yet by the Insurers.

78. Miller Development first notified the Insurers of its rejection of the defense arrangements in December 2006, after Miller Development had settled its dispute with WPGC.

79. Each of the Policies provides that:

> We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

80. Accordingly, the Insurers are entitled to a declaration that they have satisfied their obligation to defend Miller Development against the lawsuit by agreeing to defend it under a reservation of rights and subsequently offering to pay reasonable and necessary costs of Miller Development's chosen defense counsel after the insurer initially providing a defense to Miller Development withdrew that defense.

## XII.

## OTHER COVERAGE DEFENSES

The allegations of this Complaint are based on the Insurers' investigation to date. As set forth in the coverage correspondence to Miller Development from the Insurers, other terms and conditions in the Policies may be implicated by Miller Development's dispute with WPGC.

Nothing in this Complaint should be construed as a waiver by the Insurers of any such other coverage defenses, and the Insurers expressly reserve the right to raise all other terms and conditions in their Policies as defenses to coverage as appropriate.

## XIII.

### PRAYER FOR RELIEF

WHEREFORE, the Insurers pray for judgment as follows:

A. A declaration that, for the reasons set forth herein, there is no coverage under any of the Policies for the dispute between Miller Development and WPGC because coverage for such amounts is barred by the Policies' pollution exclusions;

B. A declaration that, for the reasons set for herein, there is no coverage under some or all of the Policies for the dispute between Miller Development and WPGC to the extent that WPGC's property damage was "expected or intended" by Miller Development;

C. A declaration that, for the reasons set forth herein, there is no coverage under some or all of their for the dispute between Miller Development and WPGC to the extent that, prior to the effective period of one or more of the Policies, Miller Development, including one or more of its "'executive officers' and directors" knew that WPGC's "property damage" had occurred or was beginning to occur;

D. A declaration that, for the reasons set forth herein, there is no coverage under any of the Policies for any portion of the dispute between Miller Development and WPGC that does not concern "property damage" under the policies;

E. A declaration that, for the reasons set forth herein, there is no coverage under any of the Policies for any punitive damages to the extent that punitive damages are uninsurable under applicable law, and/or for other relief other than compensatory damages;

   F. A declaration that, for the reasons set forth herein, the Insurers have satisfied their defense obligations to Miller Development under the Policies;

   G. Awarding the Insurers such additional declaratory and other relief as shall be found to be appropriate under the circumstances; and

   H. Awarding the Insurers  its fees and costs incurred in prosecuting this action.


                              Respectfully submitted,


                              By: _____
                              WILEY REIN LLP
                              Laura A. Foggan, D.C. Bar No. 375555
                              1776 K Street, NW
                              Washington, DC 20006
                              Phone: 202.719.7000
                              Fax: 202.719.7049
                              lfoggan@wileyrein.com

                              *Attorney for Plaintiffs Montgomery Mutual*
                              *Insurance Co. and Peerless Insurance Co.*

Dated: March 9, 2007

## <u>CERTIFICATE OF SERVICE</u>

As of today's date, March 9, 2007, the Summons and Original Complaint for Declaratory Judgment have not been served upon the Defendant in this action.  I hereby certify that the foregoing First Amended Complaint for Declaratory Judgment will be served upon the Defendant at the same time that the Summons and Original Complaint are served.

Laura A. Foggan

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**MONTGOMERY MUTUAL**
**INSURANCE COMPANY, et al.**

Plaintiff(s),

v.

**W.C. & A.N. MILLER**
**DEVELOPMENT COMPANY**

Defendant(s).

**Civil Action No. 07-447 (CKK)**

## <u>NOTICE REGARDING BULKY EXHIBITS</u>

Pursuant to the procedures for filing bulky pleadings, bulky exhibits have been filed in paper in

this case.  The exhibits are available at the Clerk's Office for public viewing  and copying

between the  hours of 9:00 a.m. and  4:00 p.m., Monday through Friday.

**NANCY MAYER-WHITTINGTON**

Clerk