# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MONTGOMERY MUTUAL    :
INSURANCE COMPANY, et al.   :
            :
 Plaintiffs/Counter-Defendants, :
            :
v.            : Case No. 1:07CV00447
            :   (CKK)
W.C. & A.N. MILLER     :
DEVELOPMENT COMPANY,  :
            :
 Defendant/Counter-Plaintiff  :

## DEFENDANT/COUNTER-PLAINTIFF W.C. & A.N. MILLER DEVELOPMENT COMPANY'S ANSWER TO FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND COUNTERCLAIM FOR BREACH OF CONTRACT, DECLARATORY RELIEF, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (and Demand for Trial by Jury)

Defendant W.C. & A.N. Miller Development Company ("Miller"), answers the First Amended Complaint for Declaratory Judgment[1] filed by Plaintiffs Montgomery Mutual Insurance Company and Peerless Insurance Company (hereafter collectively referred to as "Plaintiff" or "Montgomery" or "the Insurers") in the above-captioned matter as follows:

## FIRST DEFENSE

Responding to the individually enumerated allegations of the Complaint, Defendant states:

## I. NATURE OF THE ACTION

1. Defendant admits the allegations of Paragraph 1 of the Complaint.

---

[1]Plaintiffs filed an Amended Complaint prior to the deadline for the submission of an Answer by the defendant. This Answer therefore addresses only the allegations of the Amended Complaint.

2.      Defendant admits that a lawsuit was filed, but denies Plaintiff's characterizations set forth in Paragraph 2. With respect to the referenced lawsuit, the allegations are set forth in the lawsuit, *CBS WPGC (AM), Inc. v. W.C. & A.N. Miller Companies, Inc., et al.,* Civil Action No. CAL05-24114 (Circuit Court for Prince George's County, Maryland), which speaks for itself. Further, with respect to plaintiff's statement that "Miller Development and WPGC have settled the litigation," such statement is misleading and incomplete. In fact, pursuant to the insurance policies plaintiff issued to defendant, Montgomery agreed to defend Miller against the lawsuit and purportedly reserved its right to withdraw if it determined at a later date that coverage did not apply. To this date, Plaintiff has never disclaimed coverage. In addition, as defendant's insurers, Montgomery participated in the settlement conference and either explicitly or implicitly approved the reasonableness of the settlement.

3.      The allegations of Paragraph 3 of the Complaint seek a declaratory judgment with respect to several declarations, and no response thereto is required of defendant.

## II.  PARTIES

4-5.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraphs 4 and 5 of the Complaint.

6.      Defendant admits that it is a Delaware corporation. However, as of the filing of this Answer, Miller's principal corporate offices are located in Bethesda, Maryland.

## III.  JURISDICTION AND VENUE

7-8.    The allegations of Paragraphs 7 and 8 of the Complaint set forth allegations regarding jurisdiction and venue to which the defendant is not required to respond. However,

2

Miller denies that it "resides" in the District of Columbia as of the filing of this Answer, and further contends that the legal issues in dispute between the parties is governed by Maryland law.

## IV.  FACTUAL ALLEGATIONS

### Policies Issued by Montgomery and Peerless

9-11.   Defendant admits the allegations of Paragraphs 9-11 of the Complaint.

12-19.   Plaintiff sets forth selective policy language in Paragraphs 12-19. Defendant is not required to admit or deny the terms of the policies which speak for themselves.

### The Underlying Litigation Against Miller Development

20.     Defendant admits that the referenced lawsuit was filed, but denies Plaintiff's characterizations set forth in Paragraph 20. With respect to the referenced lawsuit, the allegations are set forth in the lawsuit, *CBS WPGC (AM), Inc. v. W.C. & A.N. Miller Companies, Inc., et al.,* Civil Action No. CAL05-24114 (Circuit Court for Prince George's County, Maryland) ("WPGC litigation" or "Underlying litigation"), which speaks for itself. With respect to Plaintiff's allegation that W.C. & A.N. Miller Companies, Inc. is a non-existent entity, Defendant admits such allegation.

21-28.   The referenced amended Complaint in Civil Action No. CAL05-24114 speaks for itself and Defendant is not required to admit or deny whether the amended Complaint states what Plaintiff asserts it states in Paragraphs 21-28.

29.     The referenced Prince George's County Department of Environmental Resources, Property Maintenance Violation Notice, Case No. PM-444-3-01 (April 3, 2001)

speaks for itself and Defendant is not required to admit or deny the allegations in Paragraph 29.

30.     The referenced Maryland Department of the Environment, Site Complaint No. SC-03-SW-517 speaks for itself and Defendant is not required to admit or deny the allegations in Paragraph 30.

31.     Defendant denies the allegations of Paragraph 31 of the Complaint.

### Coverage Correspondence and Settlement

32.     Defendant admits the allegations of Paragraph 32 of the Complaint.

33.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation that the Insurers conducted a preliminary investigation of the matter.  Defendant admits that in February 2006, Montgomery agreed to defend Defendant against the WPGC lawsuit subject to a letter purporting to reserve certain rights. Defendant denies, however, that Montgomery's reservation of rights was correct or binding on Defendant.

34.     In Paragraph 34, Plaintiff characterizes the terms of its February 2006 Reservation of Rights letter.  Defendant is not required to admit or deny the contents of the letter which speaks for itself.  Defendant denies the remaining allegation in Paragraph 34.

35.     Defendant admits that it gave notice of the underlying litigation to its professional liability insurer on November 30, 2005, prior to giving Montgomery notice of the litigation on December 27, 2005. Defendant denies plaintiff's characterization in Paragraph 35 that Miller's professional liability insurer "provided a defense to Miller Development under a reservation of rights and assigned defense counsel to represent Miller."

4

In fact, Miller's professional liability carrier ("AIG") had originally agreed to defend Miller under a reservation of rights, but assigned an employee attorney to represent Miller rather than appoint independent counsel. Moreover, despite Montgomery's representation that it would defend Miller under a reservation of rights, Montgomery never assigned counsel to defend Miller in the litigation but simply allowed AIG's employee to represent Miller, thereby breaching Montgomery's duty to provide independent defense counsel. When AIG ultimately disclaimed coverage and withdrew its employee from defense of the litigation, Montgomery further breached its obligations and failed to assign independent counsel to defend Miller's interests. Due to the continuing breaches by AIG and Montgomery to appoint independent counsel, Miller was put in the position of having to retain, at its own expense, the services of George Masson, Esquire, as independent counsel on its behalf, first, to monitor the efforts of AIG's employee and then to continue to represent Miller's interests when AIG's employee withdrew from the defense of its interests, and Montgomery continued to breach its obligations under the policies and failed to assign defense counsel to represent Miller's interests. With respect to the remaining allegation in this paragraph as to Montgomery's February 2006 Reservation of Rights letter, Defendant is not required to admit or deny the contents of the letter which speaks for itself.

36.    Defendant is without knowledge or information sufficient to form a belief as to why the professional liability insurer denied coverage in June 2006, but admits that by letter dated June 7, 2006, AIG disclaimed coverage of this matter. Defendant is not required to admit or deny the contents of the letter which speaks for itself.

37.     Defendant admits that the Insurers have not reimbursed it for the defense costs Defendant incurred in the WPGC litigation.  Defendant denies that Montgomery agreed to pay for Mr. Masson's services "[a]fter the withdrawal of initial defense counsel." Rather, Montgomery did not agree in principal to pay for Mr. Masson's efforts until after the underlying litigation was settled. Further, Defendant alleges that Montgomery's position regarding the hourly rate, categories of work, and dates of work by Mr. Masson have shifted and that no fair and reasonable position has been stated by Montgomery. Since the Insurers breached their obligation to provide Defendant with independent defense counsel to represent it against the WPGC litigation, Defendant denies that the Insurers and Defendant are required to agree upon the reasonable and necessary costs of defense.

38.     Miller admits that in October 2006 it participated in a mediation with respect to settlement of the underlying litigation.  Miller denies plaintiff's characterization that the mediation "resulted in a settlement-in-principle of the underlying litigation," as the underlying case has been fully settled and resolved.

39.     Miller admits that Montgomery also attended the mediation as set forth in Paragraph 39.  Miller denies that at the mediation the Insurers and Miller agreed to resolve any potential obligations under the Insurers' Policies for the dispute between Miller Development and WPGC. Miller admits that its coverage counsel sent a letter dated December 6, 2006 to Montgomery, the contents of which speak for themselves.

40.     Defendant is not required to admit or deny the contents of the December 6, 2006 letter which speaks for itself.

## V. CONTROVERSY AND RIPENESS

41.    Defendant concurs that the Insurers and Miller currently dispute their rights and obligations under the policies at issue.

42.    Defendant admits that the Insurers issued to Miller a letter purporting to reserve their rights with respect to coverage of this matter. The terms of that letter speak for itself. Defendant denies that the Insurers informed Miller why the Policies do not provide coverage. Instead, the Insurers informed Miller why the Policies *may* not provide coverage, as set forth in the Insurers' reservation of rights.  The Insurers, however, to the date of this Answer have never issued a disclaimer of coverage to Miller.  Miller admits that it has asserted that the Insurers have breached their duties to defend and indemnify it and demanded payment of the underlying settlement amount plus defense costs.  Miller further takes the position that the Insurers are responsible for Miller's attorneys' fees and costs incurred in pursuing coverage from the Insurers, including those already incurred and those that continue to be incurred in connection with this litigation.

43.    Paragraph 43 of the Complaint states that the Insurers seek a declaratory judgment that there is no coverage for the dispute between Miller and WPGC under the Policies, and no response thereto is required of defendant.  Defendant admits that it contests this assertion, as it is Defendant's position that there is coverage for the dispute between Miller and WPGC.

44.    Paragraph 44 contains a legal conclusion to which no response is required.

## VI.  CLAIM FOR DECLARATORY RELIEF - COUNT I
### (Pollution Exclusion)

45.     Defendant adopts and incorporates by reference its responses to the allegations of Paragraphs 1 through 44 of the Complaint.

46.     Defendant admits that it owned the Miller Property but denies that it occupied the  property at all times relevant to this matter.

47-50.   Defendant denies the allegations of Paragraphs 47-50 of the Complaint.

## VII.  CLAIM FOR DECLARATORY RELIEF - COUNT II
### (Expected or Intended Injury)

51.     Defendant adopts and incorporates by reference its responses to the allegations of Paragraphs 1 through 50 of the Complaint.

52-55.   Defendant denies the allegations of Paragraphs 52-55 of the Complaint.

56.     The Policies speak for themselves and Defendant is not required to admit or deny the allegations in Paragraph 56.

57-58.   Defendant denies the allegations of Paragraphs 57-58 of the Complaint.

## VIII.  CLAIM FOR DECLARATORY RELIEF - COUNT III
### (Known Injury Provision)

59.     Defendant adopts and incorporates by reference its responses to the allegations of Paragraphs 1 through 58 of the Complaint.

60-61.   Defendant denies the allegations of Paragraphs 60-61 of the Complaint.

62.     The Policies speak for themselves and Defendant is not required to admit or deny the allegations in Paragraph 62.

63-64.   Defendant denies the allegations of Paragraphs 63-64 of the Complaint.

## IX.  CLAIM FOR DECLARATORY RELIEF - COUNT IV
### (Property Damage)

65.    Defendant adopts and incorporates by reference its responses to the allegations of Paragraphs 1 through 64 of the Complaint.

66.    The referenced Complaint speaks for itself and Defendant is not required to admit or deny whether it states what Plaintiff asserts it states in Paragraph 66.

67.    The Policies speak for themselves and Defendant is not required to admit or deny the allegations in Paragraph 67.

68.    The allegations set forth in Paragraph 68 of the Complaint contain legal conclusions, to which no response is required.  In the alternative, defendant denies the allegations in Paragraph 68.

69.    Defendant denies the allegations of Paragraphs 69 of the Complaint.

## X.  CLAIM FOR DECLARATORY RELIEF - COUNT V
### (No Coverage for Certain Relief Sought by WPGC)

70.    Defendant adopts and incorporates by reference its responses to the allegations of Paragraphs 1 through 69 of the Complaint.

71.    The referenced underlying Complaint speaks for itself and Defendant is not required to admit or deny the allegations of Paragraph 71.

72.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 72 of the Complaint.

73.    Defendant denies that any portion of the underlying settlement encompassed punitive damages.

9

## XI.  CLAIM FOR DECLARATORY RELIEF - COUNT VI
### (Satisfaction of Duty to Defend)

74.    Defendant adopts and incorporates by reference its responses to the allegations of Paragraphs 1 through 73 of the Complaint.

75.    Defendant admits that the Insurers agreed to defend Miller against the WPGC lawsuit, but alleges that the Insurers breached their duty by failing to appoint independent counsel to the defense of the litigation. With respect to the remaining allegations in Paragraph 75, Defendant is without knowledge or information sufficient to form a belief as to the truth of these allegations.

76.    Defendant denies the allegations of Paragraph 76. Rather, Montgomery did not agree in principal to pay for Mr. Masson's efforts until after the underlying litigation was settled.  Further, Defendant alleges that Montgomery's position regarding the hourly rate, categories of work, and dates of work by Mr. Masson have shifted and that no fair and reasonable position has been stated by Montgomery.

77.    Defendant admits that the Insurers have not reimbursed it for the defense costs Defendant incurred in the WPGC litigation.  Since the Insurers breached their obligation to defend Defendant against the WPGC litigation, Defendant denies that the Insurers and Defendant are required to agree upon the reasonable and necessary costs of defense.

78.    Defendant denies the allegations of Paragraph 78 and incorporates by reference its responses to the allegations of Paragraph 76.

79.    The Policies speak for themselves and Defendant is not required to admit or deny the allegations in Paragraph 79.

80.    Defendant denies the allegations of Paragraph 80 of the Complaint.

10

## XII.  OTHER COVERAGE DEFENSES

This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, defendant denies the allegations in this Paragraph.

## XIII.  PRAYER FOR RELIEF

Defendant denies that plaintiffs are entitled to a judgment and declarations set forth in Paragraphs A through H in their Prayer for Relief.

## SECOND DEFENSE

The Complaint fails to state a cause of action upon which relief can be granted.

## THIRD DEFENSE

Defendant hereby reserves the right to assert those defenses which may become known as a result of discovery and investigation in this matter.

## FOURTH DEFENSE

The Complaint is barred by the doctrine of estoppel.

## FIFTH DEFENSE

The Complaint is barred by the doctrine of laches, waiver, and/or release.

## SIXTH DEFENSE

Any and all claims or allegations contained in the Complaint not otherwise expressly admitted or denied herein are hereby denied.

WHEREFORE, defendant W.C. & A.N. Miller Development Company, having fully answered the Complaint respectfully requests:

1.      That the Complaint be dismissed with prejudice;

2.      That defendant be awarded the fees and costs incurred as a result of this suit;

3.      That defendant be awarded such further relief as this Court deems proper.

## COUNTERCLAIM

The Defendant and Counter-Plaintiff, W.C. & A.N. Miller Development Company ("Miller"), asserts this Counterclaim against the Plaintiffs/Counter-Defendants, Montgomery Mutual Insurance Company and Peerless Insurance Company (hereafter collectively referred to as "the Insurers" or "Montgomery"). As grounds for this Counterclaim, Miller states:

## I. NATURE OF THE COUNTERCLAIM

This Counterclaim is an action for breach of contract against the Insurers, under general liability policies issued by the Insurers to Miller, in connection with an underlying action brought against Miller seeking damages for property damage and/or personal injury allegedly caused by Miller. The insurers are obligated, under the terms of the policies issued to Miller, to pay in full the sums Miller expended to defend itself against the underlying action and to reimburse Miller for the amounts Miller was obligated to pay in settlement of the underlying litigation to avoid liability to third parties. This is also an action for declaratory judgment, that the Insurers are obligated to pay in full the costs of defense and settlement regarding the underlying action brought against Miller. Miller also brings an action for Breach of the Covenant of Good Faith and Fair Dealing based on the Insurers' bad faith and outrageous conduct in the way the Insurers treated their insured, as fully described herein.

## II. PARTIES

1. Defendant/Counter-Plaintiff W.C. & A.N. Miller Development Company ("Miller") is a Delaware corporation with its principal place of business in Bethesda,

12

Maryland. At the time the Complaint was filed in this case, Miller's principal place of business was in the District of Columbia.

2.    Upon information and belief, Plaintiff/Counter-Defendant Montgomery Mutual Insurance Company is a Maryland corporation with its principal place of business in Maryland.

3.    Upon information and belief, Plaintiff/Counter-Defendant Peerless Insurance Company is a New Hampshire corporation with its principal place of business in New Hampshire.

### III.  JURISDICTION AND VENUE

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). The Defendant/Counter-Plaintiff and Plaintiffs/Counter-Defendants were citizens of different states at the time the Complaint was filed (although, since Miller's current principal place of business is in Maryland and Montgomery's principal place of business is also in Maryland, there is no longer diversity between the parties), and the amount in controversy, exclusive of interest and costs, exceeds $75,000. This Court also has jurisdiction to award declaratory relief pursuant to 28 U.S.C. § 2201.

5.    Venue in this Court is appropriate under 28 U.S.C. § 1391(a) and (c).

13

## IV.  FACTS COMMON TO ALL COUNTS

### The Underlying Litigation Against Miller

6.    This claim has its genesis in a lawsuit brought on November 16, 2005, as amended on June 2, 2006, in the Circuit Court for Prince George's County, Maryland by plaintiff, CBS WPGC (AM), Inc. ("WPGC") against Miller in the Circuit Court for Prince George's County, Maryland under the caption *CBS WPGC (AM), Inc. v. W.C. & A.N. Miller Companies, Inc., et al.,* Civil Action No. CAL05-24114 (Circuit Court for Prince George's County, Maryland) ("WPGC litigation" or "Underlying litigation").  A copy of the Amended Complaint in the WPGC litigation is attached as Exhibit F to Plaintiffs' First Amended Complaint for Declaratory Judgment.

7.    According to the allegations of the Amended Complaint in the WPGC litigation, Miller was the owner of two parcels of land in Capitol Heights, Maryland, directly adjoining property owned by WPGC where WPGC's radio transmission tower is located. WPGC alleged that Miller allowed its tenant and subtenant to operate an illegal trash dump on its property, and more recently, to deposit onto WPGC's property a twenty-five foot high mound of garbage.

8.    The Amended Complaint in the WPGC litigation alleged that Miller owned the property and oversaw the maintenance and use of the property.  The Amended Complaint alleged that in November 2000, Miller leased the property to H & H Hauling Services for a one-year term, and that H & H sublet the property to Mainor's Bus Service, the operator of a bus company, and J. Williamson Demolition, a trash demolition, hauling, and dumping business.  The complaint alleged that the subtenants conducted businesses that were incompatible with the zoning status of the property.  The complaint alleged that Miller

allowed and/or was aware of the use of the property by the subtenants and failed to take reasonable steps to abate the dumping or secure the property, resulting in overflow onto the WPGC property.

9.      The Amended complaint in the WPGC litigation alleged that the trash and debris included a large quantity of construction debris, including metallic construction debris, and that WPGC expended approximately $300,000 to remove the trash and debris.  WPGC also alleged that the metallic debris caused fluctuations in its radio signal, and that it expended significant expenses to address those fluctuations.

10.     The Amended complaint in the WPGC litigation contained five counts: (1) Trespass; (2) Nuisance; (3) Negligence (ongoing failure to comply with state and county laws); (4) Negligence (ongoing failure to take adequate steps to protect adjoining property owners); and (5) Intentional Misrepresentation, and sought to recover from Miller the costs of cleaning up the property and other related injuries.

11.     The WPGC suit sought compensatory damages in excess of $500,000, prejudgment interest, punitive damages, and attorneys' fees.

**Insurance Policies Issued by Montgomery and Peerless to Miller**

12.     Montgomery Mutual Insurance Company issued Commercial General Liability Policy No. GL 9537911 to Miller during the period 9/30/01 to 9/30/02.  Peerless Insurance Company issued successive Commercial General Liability policies to Miller with the same policy number during the period 9/30/02 to 9/30/06.  The policies are attached as Exhibits A through E of Plaintiffs' First Amended Complaint for Declaratory Judgment.

13.     The Insuring Agreement of these policies provide, among other things, that the insurer will pay those sums that the insured becomes legally obligated to pay as damages

because of "bodily injury" and "property damage" to which this insurance applies and that the insurer has the right and duty to defend the insured against any "suit" seeking those damages.

### Miller's Request for Insurance Coverage and the Insurers' Response

14.    On December 27, 2005, Miller put the Insurers on notice of the Underlying Litigation and requested that its Insurers defend it against WPGC's allegations.

15.    Montgomery Mutual issued a purported  "Reservation of Rights" letter dated February 22, 2006, in which Montgomery purported to reserve its rights with respect to several policy provisions.

16.    In its letter, Montgomery stated that it would defend Miller against the suit but reserved its right to withdraw if it determined at a later date that coverage did not apply.

17.    The letter further requested that Montgomery be provided with information on the carrier that was currently defending the action so that Montgomery could coordinate the defense with it and come to a cost sharing agreement.

18.    Miller's professional liability carrier, National Union Fire Insurance Company of Pittsburgh, part of the AIG group of companies ("AIG"), had originally agreed to defend Miller under a reservation of rights.

19.    AIG never assigned independent counsel to represent Miller, but instead, assigned an employee attorney to represent Miller under a reservation of rights.

20.    Despite Montgomery's representation that it would defend Miller, Montgomery never assigned independent counsel to defend Miller in the WPGC litigation but simply allowed AIG's employee attorney to continue to defend Miller despite the fact that such counsel had a clear conflict of interest.

16

21.    Miller retained, at its own expense, the services of George Masson, Esquire, as independent counsel on its behalf, to monitor the efforts of the AIG employee attorney.

22.    By letter dated June 7, 2006, AIG disclaimed coverage of this matter having determined that there was no coverage under Miller's professional liability policy, and advised that it would continue to defend Miller for thirty days, until July 6, 2006.

23.    The Insurers never assigned independent counsel to represent Miller at the Insurers' expense.

24.    Mr. Masson took over the complete defense of Miller after the Insurers failed to assign counsel to represent Miller's interests.

25.    The Insurers never reimbursed Miller for the fees and expenses of Mr. Masson.

### Settlement of the Underlying Litigation

26.    Following the withdrawal of the AIG employee attorney, Miller and the Insurers participated in a settlement conference in which the Underlying Litigation was settled for the sum of $400,000.00.

27.    This settlement was payable in two installments of $200,000.00 each on November 30, 2006 and November 30, 2007.

28.    Although Montgomery never disclaimed coverage of this matter, Montgomery took the position at the Settlement that it would contribute only $35,000.00 to the settlement.

29.    Montgomery further took the position that it would reimburse the fees of Mr. Masson at $150 per hour.

30.    Miller did not accepted Montgomery's proposed contribution as Miller believed it was entitled to complete coverage under the Insurers' policies.

**Dispute Between the Insurers and Miller Since the Underlying Settlement**

31.    By letter dated December 6, 2006, counsel for Miller requested that the Insurers reimburse Miller for its defense costs and indemnify it for the amounts it incurred in settling the underlying litigation.

32.    In the December 6, 2006 letter, counsel for Miller advised the Insurers that Miller was hopeful the matter could be resolved without litigation.  Miller's counsel noted that Maryland law applied to the coverage dispute, as the underlying litigation took place in Maryland and concerned property that Miller owned in Maryland, that Miller had several offices in the state of Maryland and that the policy was issued to the insured's agent in Rockville, Maryland.

33.    In an effort to avoid even more mounting costs, counsel for Miller noted that it would be efficacious to resolve the dispute, especially since if Miller was required to institute suit against the Insurers for coverage, the Insurers could  also incur the additional expense of reimbursing Miller for the fees and expenses Miller has incurred and will continue to incur in having to retain counsel to pursue the Insurers' denial of coverage (citing Maryland law awarding counsel fees in actions where an insurer has unjustifiably denied coverage).

34.    In a race to the courthouse, the Insurers clearly attempted to avoid Maryland law and sought to characterize the facts in their favor by rapidly filing a pre-emptive declaratory judgment action in the District of Columbia.  Although Miller takes the position that under the governing choice-of-law principles, Maryland law nevertheless applies to the coverage issues in dispute, under District of Columbia law it is equally clear that the Insurers have breached their obligations under the contract, have acted in bad faith, and are required

to reimburse the insured for its defense costs and indemnity obligations in the underlying litigation, as well as the additional fees and expenses it has incurred and is continuing to incur in seeking coverage under its policies and in now also defending against the Insurers' action.

## V.  CONTROVERSY AND RIPENESS

35.     The Insurers and Miller currently dispute their rights and obligations under the policies at issue.

36.     The Insurers have taken the position in this litigation that the Policies do not provide coverage for the underlying WPGC litigation.

37.     The Insured seeks a declaration from the Court that the Insurers are obligated under the terms of the policies to provide coverage to the insured for the underlying WPGC litigation.  The Insured further alleges that the Insurers have breached their contracts with the Insured and have acted in bad faith.

38.     These issues will directly govern the parties' rights and obligations under the policies and are ripe for adjudication.

## COUNT I

### (Breach of Contract - Duty to Defend)

39.     Miller incorporates by reference each of the allegations set forth in paragraphs 1 through  38 above as if expressly set forth herein.

40.     The Policies required the Insurers to have provided Miller with a full and complete defense with respect to the Underlying WPGC litigation.

41.     The Insurers have breached the terms of the insurance contracts that they sold to Miller in the following respects:

19

(a)     The Insurers failed to provide Miller a full and complete defense with respect to the Underlying WPGC litigation;

(b)     Although the Insurers are well aware that an attorney with a conflict of interest cannot be assigned to represent an insured's interest, the Insurers failed to assign independent counsel to represent the insured and allowed an insurer employee-attorney with a conflict of interest to represent the insured in the Underlying litigation.

(c)     When Miller's professional liability insurer ultimately disclaimed coverage and withdrew its employee from defense of the litigation, Montgomery further breached its obligations and failed to assign independent counsel to defend Miller's interests.

42.     As a direct and proximate result of the Insurers' breach of contract, Miller has been deprived of the benefit of the insurance coverage for which it has paid substantial premiums.

43.     As a direct and proximate result of the Insurers' breach of contract, Miller has sustained substantial damages of several hundred thousand dollars.  Moreover, Miller has incurred attorneys' fees and costs as a direct result of the Insurers' breach.

## COUNT II
### (Breach of Contract - Duty to Indemnify)

44.     Miller incorporates by reference each of the allegations set forth in paragraphs 1 through 43 above as if expressly set forth herein.

45.     The Policies required the Insurers to fully indemnify Miller with respect to the Underlying WPGC litigation.

20

46.    The Insurers are estopped from asserting any policy defenses as a basis of disclaimer due to the Insurers' failure to adequately protect Miller's interests, allowing an insurer employee-attorney with a conflict of interest to represent its insured, and failing to assign, at the Insurer's expense, independent counsel to represent the insured's interest.

47.    The Insurers have breached the terms of the insurance contracts that they sold to Miller by failing to indemnify and pay in full the costs of Miller's legal liability in connection with the underlying WPGC litigation.

48.    As a direct and proximate result of the Insurers' breach of contract, Miller has been deprived of the benefit of the insurance coverage for which it has paid substantial premiums.

49.    As a direct and proximate result of the Insurers' breach of contract, Miller has sustained substantial damages of several hundred thousand dollars.  Moreover, Miller has incurred attorneys' fees and costs as a direct result of the Insurers' breach.

<u>**COUNT II**</u>
<u>**(Declaratory Judgment)**</u>

50.    Miller incorporates by reference each of the allegations set forth in paragraphs 1 through  49 above as if expressly set forth herein.

51.    The claims by WPGC alleged facts which fall within the coverage of the insurance policies at issue.

52.    The alleged damage took place during the time period in which the policies issued by the Insurers were in effect.

53.    Pursuant to the terms and conditions of its policies of insurance, the Insurers have failed to honor their obligations under the insurance policies issued to Miller.

21

54.     Under the terms of the insurance policies at issue, the Insurers are obligated to indemnify Miller with respect to any liabilities arising out of such claims and to reimburse it for all of the expenses incurred in connection with those claims.

55.     The Insurers are estopped from asserting any policy defenses as a basis of disclaimer due to the Insurers' failure to adequately protect Miller's interests, allowing an insurer employee-attorney with a conflict of interest to represent its insured, and failing to assign, at the Insurer's expense, independent counsel to represent the insured's interest.

56.     The Insurers contend that they are not legally obligated to pay for Miller's defense and indemnity in connection with the Underlying lawsuit.

57.     An actual and justiciable controversy exists between Miller and the Insurers with respect to the duties and obligations of the Insurers under the insurance policies issued to Miller in connection with the Underlying litigation.

58.     As a direct, proximate, and legal result of the Insurers' refusal to indemnify Miller and pay for all of Miller's liabilities in connection with the Underlying litigation, Miller has sustained substantial damages.

### COUNT III
### (Breach of the Duty of Good Faith and Fair Dealing)

59.     Miller incorporates by reference each of the allegations set forth in paragraphs 1 through 58 above as if expressly set forth herein.

60.     By selling insurance policies to Miller and collecting premiums, the Insurers assumed a duty of good faith and fair dealing toward their insured.

22

61.    Each of Miller's insurance policies contained an implied promise that the Insurers would deal fairly and in good faith with its insured and would do nothing to injure, frustrate, or interfere with its insured's rights to receive the benefits of its insurance policies.

62.    The Insurers have breached the duty of good faith and fair dealing owed to their insured in a number of respects, including, but not limited to, the following:

    a.    The Insurers failed to provide independent counsel to represent the Insured's interests in the Underlying litigation;

    b.    Although the Insurers were aware that the counsel assigned by the Insured's Professional Liability insurer had a conflict of interest in that the Professional Liability Insurer had assigned an employee-attorney to represent the insured while that insurer reserved its right to disclaim coverage, and while the Insurers similarly had a conflict of interest because they reserved their rights to disclaim coverage, they failed to assign counsel without a conflict of interest to serve as defense counsel for Miller in the Underlying litigation;

    c.    When the Professional Liability insurer withdrew from its defense of the Insured, the Insurers continued in their failure to assign independent counsel to represent the Insured, at the Insurer's expense, in the Underlying litigation;

    d.    The Insurers placed the Insured in an extremely prejudicial situation by agreeing to participate in the Settlement discussions, never having assigned independent counsel to represent the insured at the insurer's expense, never having disclaimed coverage, yet taking the position at

the Settlement that they would only contribute a fraction of the Settlement amount while either explicitly or implicitly approving the reasonableness of the settlement.

e.    The Insurers refused to indemnify their insured for the settlement with respect to property damage alleged in the underlying Complaint, although the policies that were in effect at the time of the occurrence clearly provides coverage for the occurrence at issue;

f.    The Insurers failed to respond in a timely fashion to the Insured's request for reimbursement of its defense counsel fees;

g.    The Insurers failed to conduct a prompt, reasonable, good faith investigation of the facts underlying the claims against Miller in connection with the WPGC litigation;

h.    The Insurers willfully and in bad faith interpreted their policy provisions and the factual circumstances so as to resolve ambiguities and uncertainties against Miller and to their own interests;

i.    The Insurers misrepresented to Miller the meaning of insurance policy provisions, insurance coverages, and exclusions; and

j.    The Insurers have forced Miller into lengthy and expensive litigation when Miller is clearly entitled to insurance coverage under the policies issued by the Insurers.

63.    As a direct, proximate and legal result of the Insurers' breach of the duty of good faith and fair dealing, Miller has sustained substantial damages, including, but not

24

limited to the sums spent to settle the claim of property damage in the WPGC litigation, attorneys' fees incurred in the underlying litigation, and interest.

64.     Because the Insurers unjustifiably and wrongfully breached their duty of good faith and fair dealing, necessitating this claim by Miller, Miller is entitled to recover costs and attorneys fees incurred in litigating the coverage issues in this suit.  Moreover, as described above, after  counsel for Miller advised the Insurers that Miller was hopeful the matter could be resolved without litigation, and noted that Maryland law applied to the coverage dispute, in a race to the courthouse, the Insurers clearly attempted to avoid Maryland law and sought to characterize the facts in their favor by rapidly filing a pre-emptive declaratory judgment action in the District of Columbia.  Although Miller takes the position that under the governing choice-of-law principles, Maryland law nevertheless applies to the coverage issues in dispute, under District of Columbia law it is equally clear that the Insurers have breached their obligations under the contract, have acted in bad faith, and are required to reimburse the insured for its defense costs and indemnity obligations in the underlying litigation, as well as the additional fees and expenses it has incurred and is continuing to incur in seeking coverage under its policies and in now also defending against the Insurers' action.

*     *     *

## VI.  PRAYER FOR RELIEF

WHEREFORE, Miller prays for judgment against the Insurers, as follows:

a.     Enter a judgment determining and declaring that Miller is entitled to liability insurance coverage and indemnity by the Insurers with respect to the underlying WPGC litigation.

25

b.      Enter a judgment determining and declaring that the Insurers are estopped from asserting any policy defenses due to their failure to assign independent counsel to represent the insured's interests in the Underlying litigation and allowing an attorney with a conflict of interest to represent the insured in that litigation;

c.      Enter a judgment determining and declaring that the Insurers are obligated to reimburse Miller for its costs of defense and obligations incurred pursuant to the settlement of the WPGC litigation;

d.      Enter a judgment determining and declaring that the Insurers are obligated to reimburse Miller for the fees and costs it has incurred and will continue to incur in pursuing coverage from its Insurers including those incurred and continuing to be incurred in defending against the Declaratory Judgment action instituted by the Insurers and in connection with this Counterclaim;

e.      Enter an order against the Insurers, for:

     i.      Compensatory damages in an amount to be determined for all past due defense costs in connection with the underlying WPGC litigation;

     ii.     Compensatory damages in the amount of $ 400,000 for all indemnification costs in connection with the underlying WPGC litigation;

     iii.    Prejudgment interest and costs;

     iv.    Attorneys' fees and costs Miller has incurred and will continue to incur in pursuing coverage from its Insurers including those incurred in defending against the Declaratory Judgment action instituted by the Insurers and in connection with Miller's Counterclaim; and

26

   v.  Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

  Defendant/Counter-Plaintiff hereby demands a trial by jury on the Amended Complaint and Counterclaim as to all issues so triable.


         /s/

        Geoffrey S. Gavett

        Respectfully submitted,

        GAVETT AND DATT, P.C.


  BY    /s/

        Geoffrey S. Gavett

        15850 Crabbs Branch Way, Suite 180

        Rockville, Maryland 20855

        ggavett@gavettdatt.com

        Telephone: 301-948-1177

        Facsimile: 301-948-4334

        **Counsel for Defendant/Counter-Plaintiff**

        **W.C. & A.N. Miller Development Company**

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that a copy of the foregoing document was electronically served on the 29th day of June 2007, on:

Laura A. Foggan, Esquire    **Counsel for Plaintiffs/Counter-Defendants**
Wiley Rein, LLP
1776 K Street, NW
Washington, DC  20006
202-719-7000


        /s/

        Geoffrey S. Gavett

F:\Data\GD\Corporate\315.000\315.009\pleadings\Answer Counterclaim.001.wpd